# Richmond.

## RICHMOND PASSENGER & POWER CO. v. ALLEN.

### February 5, 1903.

1. INSTRUCTIONS—*Evidence to Support.*—Any evidence tending to prove a fact is sufficient to justify the court in giving an instruction applicable thereto, if requested so to do, even though the evidence be so slight as to be insufficient to support a verdict founded upon it.

2. CONTRIBUTORY NEGLIGENCE—*Admissions—Burden of Proof.*—Where, in an action to recover damages for personal injuries to a passenger, the plaintiff admits his contributory negligence, the burden is on him to show that, notwithstanding such negligence on his part, the defendant could, by the exercise of reasonable care, have avoided the accident.

3. INSTRUCTIONS—*Evidence to Support.*—It is error to give an instruction where there is no evidence tending to prove the facts upon which it is based.

4. ERRONEOUS INSTRUCTIONS—*Effect on Verdict.*—All error is presumed to be prejudicial, and only in extreme cases, where it clearly appears that no injury could have resulted, will this court refuse to set aside a verdict rendered on erroneous instructions.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered January 21, 1902, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Henry Taylor, Jr.,* for the plaintiff in error.

*J. Preston Carson* and *J. Kent Rawley,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This action was brought by Mrs. Alice W. Allen in the Law and Equity Court of the city of Richmond to recover damages of the Richmond Passenger & Power Company for injuries alleged to have been sustained by her in consequence of negligence of the defendant company under the following circumstances:

The defendant in error was a passenger on one of the electric street cars of the plaintiff in error coming east on its southern track, on Main street, in the city of Richmond. She desired to get off the car at Third and Main streets, which is within a short distance of her home on Third street, the regular stopping point for the car being at the east line of Third street. The signal had been given by the conductor to the motorman to stop at Third street, and as the car approached Third and Main streets, and before getting to the west line of Third street, it "slowed up, and was running very slowly" (or perhaps stopped) on account of a car in some trouble on the northern track heading to the west. The defendant in error left her seat in the car before it had reached the west side of Third street, and came out on the rear platform, whereupon the conductor came up from behind, taking her by the arm with one hand, and said to her, as he claims, "Madame, be careful, wait until the car stops," which statement she denies. Defendant in error, however, continued stepping from the platform to the step of the car, and then to the ground with her right foot, her left foot still being upon the step, whereupon, from some cause, she fell and sustained the injuries for which she sues.

The trial resulted in a verdict and judgment for $1,500 against the defendant company, and the case is before us upon a writ of error awarded by one of the judges of this court.

The only error assigned is to the ruling of the trial court in

giving instruction "B," asked for by the defendant in error, which is as follows:

"The court instructs the jury that even though it should believe from the evidence that the plaintiff was guilty of contributory negligence in getting off of said car, and even though they should believe from the evidence that her negligence contributed to the accident, yet if they further believe from the evidence that the conductor, after he discovered the plaintiff's peril, by the exercise of proper care and caution, could have avoided the mischief which happened, and failed to do so, the plaintiff's negligence will not excuse the defendant, and the plaintiff is entitled to recover."

It is conceded that this instruction correctly states the law, but the contention is that it is not founded on any evidence in the case.

The practice in the courts of this State is not to pass upon the weight of the evidence in instructing the jury, but to instruct them as to the law upon a given state of facts to be found by the jury from the evidence, and it has been a rule for more than half a century that where there is any evidence tending to prove a fact, it is sufficient to justify the court in giving an instruction applicable to it, if requested so to do, even though the evidence be so slight as to be insufficient to support a verdict founded on it.

In *Hopkins* v. *Richardson*, 9 Gratt. 496, the opinion by Lee, J., says: "It is certainly correct that no court is required to instruct the jury upon abstract questions of law not presented by the proofs in the cause. But this function in determining whether any proof has been given of the hypothetical case or not, and if none, of refusing to give the instruction asked for upon it, is one to be exercised with proper care and great caution. In a plain case of a total absence of evidence tending to make out the supposed case, the court may well refuse to give any instruction based upon it. But where there is such evi-

dence, of however little weight it may appear to be to the court, or however inadequate in its opinion, to make out the case supposed, it is best and safest for the court not to refuse to give the instruction asked for if it propound the law correctly."

This rule, now spoken of as the "*Scintilla* doctrine," has been approved in a great number of cases decided by this court beginning with *Farish* v. *Riegle*, 11 Gratt. 697, 62 Am. Dec. 666, and coming down to the case of *Southern Rwy. Co.* v. *Wilcox*, 99 Va. 394, 39 S. E. 144, and we refer especially to these decisions, prior to those by this court as at present constituted, because of the argument made in this case that the rule as stated in *Jones* v. *Morris*, 97 Va. 43, 33 S. E. 377, "goes far beyond any of the previous cases cited as authority for the rule." It is only necessary to add that the rule as stated by Keith, P., in *Jones* v. *Morris*, *supra*, is in perfect accord with the statement of it in *Hopkins* v. *Richardson*, *supra*, and is often repeated in the cases following.

In *Southern Railway Co.* v. *Wilcox*, *supra*, the opinion by Buchanan, J., referring to the rule, says that whether or not evidence tending to prove the facts upon which an instruction is based is sufficient to support a verdict could not, under our practice, be passed upon by the court when instructing the jury. Where a defendant is of opinion that the plaintiff has failed to prove his case, he can demur to the evidence, and generally have the court to pass upon its sufficiency, or he can wait until the jury have found their verdict, and if it be against him, have the court pass upon its sufficiency upon a motion to set aside the verdict.

The question, therefore, in this case is, whether or not there is any evidence upon which to found instruction "B" complained of, and if not, should the judgment be reversed for the error in giving the instruction?

The hypothesis on which the instruction is founded admits

the negligence of defendant in error, and that it contributed to the accident; therefore, the burden was on her to show by a preponderance of the evidence that notwithstanding her negligence plaintiff in error, after it knew or ought to have known her peril, could by reasonable care have avoided the accident. The only suggestion of blame attaching to the conductor of the car in the evidence of defendant in error given on her behalf, is in the statement: "I had every reason to believe that I was getting down at the right corner, and that he was helping me down with all the care he could, but I don't think he was in the place he ought to have been." She is, of course, here referring to the moment of the accident, and nowhere in her evidence does she say that the conductor knew of her peril or relate circumstances from which it could be inferred that he did or ought, by the exercise of reasonable care, to have known of it.

It is claimed, however, in the argument here, that the instruction is justified by the evidence of John Dyke, the conductor, examined as a witness for plaintiff in error. His statement is that the defendant in error came out on the platform while the car was in motion and before it got to the drug store on the west side of Third street; that at the time he was leaning over on the left gate looking at some cars on the opposite track, and as soon as he saw her come out of the door he stepped up behind her, took her by the arm and said, "Madame, be careful, wait until the car stops"; that at the same time he thought she wasn't going to get off until she got to the right place; that she didn't seem to pay any attention to it (the warning) and stepped on the lower step; that he then still held to the railing of the car with one hand, and leaning over, kept the other on the arm of defendant in error; that up to that time he thought she was getting on the step preparatory to getting off when the car had stopped on the east side of Third street, as he had cautioned her to wait until the car stopped; that by that time she had gotten opposite the drug store (west of Third street), and stepped

right off towards the corner, and, partly turning, fell. When asked why he took hold of her arm there, the witness answered: "Just as a precaution in case something might happen, probably. The motormen at times have occasion to stop for certain purposes. The way she was on the bottom step, if it had stopped right at once, it would have jerked her off; if they stopped at once, it would certainly have thrown her off; she would probably have fallen off, and that is the reason I held on to her; but still I didn't dream she was going to get off until she got to the opposite corner. If I had had any idea at all, I would have held hold of her."

On cross-examination the witness gives as the reason why he thought she was only getting ready to get off, that people did that constantly; and when asked: "Couldn't you have stepped off with your hand on her arm?" he replied: "It was too late then to step off." Again: "If you had held on to her and stepped off, don't you think you would have saved her from that fall?" Answer: "I might have hurt her worse; I don't know whether I could have saved her from falling or not."

Q. "You think if you had held on to her you would have drawn her back on the car?" A. "I would undoubtedly have done it, because I couldn't turn my hand loose. My left hand was against the rod; I had a tight hold on to the rod; if I had turned it loose I would have fallen off myself, because I was stooping over holding on to her." He further says, "I had to act quick; couldn't take much time"; and in his judgment, under the circumstances, the best thing for him to do was what he did, viz.: to not undertake to hold on to her, thereby pulling her back against the car; or to undertake to jump from the car while holding on to her.

We are unable to see from the evidence given by the witness, or elsewhere in the record, any foundation for instruction "B" complained of, and it was, therefore, error to give it.

"It has been repeatedly held by this court that it is error to

give an instruction when there is no evidence tending to prove the facts upon which the instruction is based.

"The reason for this is that the tendency of such instructions is to mislead the jury by withdrawing their attention from the legitimate points involved in the issue. Juries are sufficiently prone to indulge in conjectures, without having possible facts not in evidence suggested for their consideration." *Kimball & Fink* v. *Borden,* 95 Va. 203, 28 S. E. 207, and authorities cited.

"All error is presumed to be prejudicial, and while this court has approved verdicts rendered upon erroneous instructions, it does so with great caution, and only where it clearly appears that no injury could have resulted from the error." *Jackson's Case,* 97 Va. 762, 33 S. E. 547.

Instructions "A," "C," and "D," given for defendant in error in this case, fully and fairly submitted it to the jury upon the evidence, and under the peculiar circumstances. of the case we are unable to say that instruction "B" did not withdraw their attention from the legitimate points involved in the issue and mislead them into conjectures as to what might or might not have been done under the circumstances that surrounded the parties at the time of the injury complained of, and to found their verdict on these conjectures, which cannot be permitted in any case. *Southern Rwy. Co.* v. *Bruce,* 97 Va. 92, 33 S. E. 548; *Danville Street Co.* v. *Watkins,* 97 Va. 716, 34 S. E. 884; *N. & W. Rwy. Co.* v. *Cromer,* 99 Va. 765, 40 S. E. 54; *Humphreys* v. *Railroad,* 100 Va. 749, 42 S. E. 882.

It was well said by Staples, J., in *Brighthope R. R. Co.* v. *Rogers,* 76 Va. 443: "The practice now so prevalent, of multiplying instructions, many of them involving doubtful questions of law, not only places the appellate court in a position of great difficulty with respect to verdicts that are just and proper, but frequently leads to a reversal where otherwise there would be an affirmance. We respectfully suggest that one or two instructions would often be more intelligible to the jury and more effectually attain the ends of justice."

The same may be said of the practice of asking instructions, which, though embodying a sound principle of law, have no foundation in the evidence, as they serve only to mislead the jury from the consideration of the real issues in the case.

This case is not one in which the principle that, notwithstanding the erroneous instruction, the verdict is plainly right and the judgment thereon should be affirmed, can be invoked; therefore, the judgment must be reversed and the cause remanded for a new trial.

*Reversed.*