## THE TRI-CITY RAILWAY COMPANY

*v.*

## M. A. GOULD.

*Opinion filed October 24, 1905.*

1. STREET RAILWAYS—*rule as to care towards passengers.* A street railway company, through its servants in charge of the car, is required to do all that human care, vigilance and foresight can reasonably do, in view of the character of the mode of conveyance adopted and consistent with the practical operation of the road,· to safely carry a passenger.

2. INSTRUCTIONS—*when instruction as to duty of carrier to passenger is erroneous.* Failure of an instruction to require that the degree of care and vigilance owing by a carrier to a passenger be "consistent with the practical operation of the road" is error.

3. SAME—*when instruction as to credibility of witnesses is erroneous.* An instruction is erroneous which states that "the testimony of one credible witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all the facts before you, that such other witnesses are mistaken in their testimony or have knowingly testified untruthfully, and are not corroborated by other credible witnesses or by facts or circumstances proven in the case."

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding.

This is an action on the case, brought in the circuit court of Rock Island county by appellee against appellant to recover damages, alleged to have been suffered by appellee on account of being put or thrown off of one of appellant's cars by a conductor in the service of appellant. The ejection of appellee from the car took place on June 27, 1902, at about eleven o'clock in the night, which was dark and rainy. The declaration consisted of one count only, to which the plea of the general issue was filed. The cause has been tried twice,

the first time at the September term, 1903, of the circuit court of Rock Island county when a verdict was rendered in favor of appellee for $1550.00. A new trial was granted. The second trial took place at the January term, 1904, and verdict was rendered against appellant for $1100.00, and, motion for new trial having been overruled, judgment was entered for the latter amount. From this judgment an appeal was taken to the Appellate Court, which has affirmed the judgment, and this appeal is prosecuted from such judgment of affirmance.

Appellee, a civil engineer by profession, and on June 27, 1902, serving a third term as county surveyor, was at that time about seventy-one years old, and had an office in the court house in Rock Island; about nine o'clock on the evening of June 27, 1902, he left his office, got a lunch, stopped at a saloon, and played a couple of games of cards, drank one glass of whisky, and boarded a car of appellant to go to his home in Moline. When he boarded the car it was about 10.30 o'clock at night. Appellant's line of railway is operated by electric power between the cities of Moline and Rock Island, the municipal limits of which two cities adjoin. Moline lies east of Rock Island. The car was an open one with a running-board or foot-board on each side, from which passengers got on and off the car, and on which the conductor passed to and fro to collect fares. When the car reached Tenth street in Moline appellee says that he thought they had reached Fifteenth street, where he had to make a transfer. The night being dark, he opened the curtain of the car to see whether it was at or near Fifteenth street, and stepped his right foot on the foot-board to look around, and see where he was. He says that at that time the conductor of the car came along, and gave him a violent push on the breast that sent him back to his seat, and told him to get back in the car where he belonged; the conductor passed a seat or two ahead, and, on his return to the rear of the car, appellee called the conductor a "brute," a "stinker," and, he

presumes, a "damned fool." He says he was angry for being pushed back. The conductor told him: "Dry up or I will throw you off;" appellee replied, "You had better try that, you damn fool." At that time appellee was sitting facing the car with his hands down and bent forward, when Souders, the conductor, grabbed him by the neck and collar, and threw him off. When he was thrown from the car, he alighted on his hip on the brick pavement about four feet from the car. There was evidence, tending to show that force enough was used to tear his collar and necktie, and to tear his coat and throw off one of his oxford shoes; appellee says that, at that time, the car was in motion, and running four or five miles an hour, and, when he got up from the ground, it was two hundred feet away. The conductor, Souders, and the witness, Sand, who was a passenger on the car, both testify that appellee used profane and indecent language, but differ as to the language used. Sand says that, when appellee was thrown off the car, "the car was very near stopped." Souders, the conductor, and Holtz, the motorman, say that the car, at the time of the ejection of appellee, had stopped. The motorman heard none of the conversation between the conductor and appellee.

The Appellate Court in their opinion say: "There is a conflict in the testimony respecting the occurrences which immediately followed, but the testimony of appellee, which is corroborated to some extent, is to the effect that appellee resented the action of the conductor by calling him a 'brute,' a 'stinker,' and a 'damned fool.' The conductor then ordered appellee to dry up or he would throw him off. While the witnesses do not agree as to the language used by appellee to the conductor, yet there is no serious conflict in the testimony concerning what the conductor did. He took hold of appellee by the neck and collar and threw him off the car; appellee fell on his hip and received the injuries complained of. * * * The car was an open one with curtains drawn down. Appellee was in a seat alone."

The second instruction given for the appellee by the trial court is as follows:

"If the jury believe from the evidence that the defendant was engaged in the business of transporting passengers for hire upon a street railroad operated by it, then the law denominates the defendant a common carrier of passengers. And if the jury believe from the evidence that the plaintiff was a passenger on board the car of defendant, as charged in the declaration, then, while he was such passenger, the defendant, through its servants in charge of such car, was required to do all that human care, vigilance and foresight could reasonably do, in view of the character and mode of conveyance adopted, to safely carry him as such passenger; and if the jury believe from the evidence, that, while he, the plaintiff, was such passenger on said car he was unlawfully assaulted and afterwards unlawfully thrown off said car while the same was in motion, by the conductor of said car, and was injured thereby, then the defendant company is, in law, liable to the plaintiff in damages for such act."

The seventh instruction given by the court for the appellee is as follows:

"The court instructs the jury, that while in this case the plaintiff, in order to recover, must prove his case by a preponderance of the evidence, yet the word 'preponderance' only means the greater weight; and this weight is not to be determined solely by the number of witnesses testifying to a given point or fact, but the preponderance of the evidence is to be determined by the jury from all the facts and circumstances in evidence, and the credibility of the witnesses as well; that the testimony of one credible witness may be entitled to more weight than the testimony of many others; if, as to those other witnesses, you have reason to believe and do believe from the evidence and all the facts before you, that such other witnesses are mistaken in their testimony, or have knowingly testified untruthfully, and are not corrobo-

rated by other credible witnesses, or by fact or circumstances proven in the case."

JACKSON, HURST & STAFFORD, for appellant.

J. T. & S. R. KENWORTHY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The judgments in this case must be reversed for error in giving the second and seventh instructions, given for appellee, as the same are set forth in the statement preceding this opinion. The second instruction is erroneous, because it does not limit the degree of care, required of the carrier, to such care as is consistent with the practical operation of the road. In other words, that part of the second instruction, which told the jury, that "the defendant, through its servants in charge of such car, was required to do all that human care, vigilance and foresight could reasonably do, in view of the character and mode of conveyance adopted, to safely carry him as such passenger," should have read as follows: "The defendant, through its servants in charge of such car, was required to do all that human care, vigilance and foresight could reasonably do, in view of the character and mode of conveyance adopted, and consistently with the practical operation of the road, to safely carry him as such passenger." Such was the holding of this court in *North Chicago Street Railroad Co.* v. *Polkey,* 203 Ill. 225.

The seventh instruction was condemned in *Keller* v. *Hansen,* 14 Ill. App. 640, and *Johnson* v. *Farrell,* 215 Ill. 542.

The judgments of the circuit and Appellate Courts are reversed, and the cause is remanded to the former court for further proceedings, not inconsistent with the views herein expressed.                    *Reversed and remanded.*