# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VIRGINIA RAILWAY AND POWER COMPANY V. J. E. HOUSE.

### September 29, 1927.

1. POWER COMPANIES—*Electricity—Action by Customer Against Company for Improperly Cutting off Current—Instructions—Case at Bar.*—In an action by a customer against an electric power company for cutting off the customer's current, defendant asked for an instruction that, if the jury believed that the defendant acted within the terms of the contract in discontinuing the service and that under all the facts and circumstances of this case it reinstated the service within a reasonable time after the plaintiff demanded the same, they must find for defendant. Service had not been discontinued within the terms of the contract. It could have been discontinued for non-payment by the customer, but when actually cut off payment had been made and accepted.

   *Held:* That there was no error in the rejection of this instruction.

2. POWER COMPANIES—*Electricity—Action by Customer Against Company for Improperly Cutting off Current—Instructions—Case at Bar.*—In an action by a customer against an electric power company for cutting off the customer's current, defendant asked for an instruction that even if the jury found for the plaintiff they could only allow him compensatory damages. Another instruction given by the court, at the request of defendant, in effect told the jury that it was necessary for the plaintiff to prove willfulness and malice in order to recover.

   *Held:* That the first instruction correctly stated the law and should have been given, but since the court had given the second instruction it could not give the first. That is to say, it could not tell the jury that it was necessary for the plaintiff to prove willfulness and malice and then further instruct them that the plaintiff was entitled to compensatory damages only.

3. APPEAL AND ERROR—*Invited Error.*—It does not lie in the mouth of one who invites error to complain of its commission.

4. EXEMPLARY DAMAGES—*When Allowed.*—For willfulness and malice smart money may be assessed.

5. EXEMPLARY DAMAGES—*Principal and Agent—Master and Servant.*—

Punitive damages cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify, notwithstanding a wanton, oppressive or malicious intent on the part of the agent.

6. Power Companies—*Electricity—Action by Customer Against Company for Improperly Cutting off Current—Case at Bar.*—The instant case was an action by a customer against a power company for cutting off the customer's electric current. The customer's bill was overdue and a collector for the company called upon him in person. The interview between the customer and the collector was acrimonious. The bill was not paid to the collector, and he ordered the current to be cut off. This was done and reported to the office late that afternoon. In the meantime payment had been made, but the office was not notified of this trouble. Appeals for help were made from the customer's house to the office several times in the afternoon, and in response a man went to the house, but no one was in. On the customer calling the office the next morning an apology was promptly made and service restored after an interruption of about twenty-four hours.

*Held:* That the evidence did not show malice and a verdict for exemplary damages should have been set aside as contrary to and not supported by the evidence.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*T. Justin Moore; Venable, Miller, Pilcher & Parsons,* and *Norman L. Flippen,* for the plaintiff in error.

*J. Edward Cole,* for the defendant in error.

Holt, J., delivered the opinion of the court.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Ver-

dict and judgment for the plaintiff. Defendant as-
signs error.

The parties to this action, plaintiff and defendant,
will be designated as they were in the trial court. The
plaintiff is a citizen of Norfolk and resides there, and
had, under contract, been receiving into his home an
electric current supplied by the defendant, a public
service corporation doing business in that city. The
contract for service provided that all bills should be
paid within fifteen days of the date of presentation,
and that unless so paid service might be discontinued
with or without notice. The meter through which
plaintiff's current passed was read on March 11, 1925,
and a bill for the amount shown by this reading to be
due was presented on March 16th. It was not paid
at that time, and on the morning of April 7th a col-
lector called at the plaintiff's home. He was met by
a colored servant, told his mission and said that he
must collect the bill or cut out the current. This
conversation was overheard, certainly in part, by Mr.
House, who came down stairs to see the collector in
person when the purpose of his coming was again
stated. Mr. House said that he knew the bill was
overdue, and that he had just neglected paying it,
but that he would do so that morning. The collector
replied that the matter had been put off long enough
and he wanted the bill paid. The plaintiff explained
that he had no money in the house, and that the
matter would have to wait.

The conversation grew so acrimonious that further
discussion seemed futile, and the collector left. He
then told a fellow employee; "the cut-off man," to
discontinue the service at the pole. This he did at
about one o'clock on that day. Plaintiff did not pay
the bill himself, but in the meantime sent the money

to the defendant's office by his partner, Mr. Clivourne, who turned it in without referring to the preceding controversy. Soon after one o'clock plaintiff's servant informed him that no current was coming into the house, and that she was unable to do her work; thereupon he called up the "trouble department" and asked it to send out and find what was the matter. During that afternoon three or four other calls more or less urgent, and to the same effect, were put in. In answer to them a man was sent from the office but found no one at home and so did nothing, and conditions continued as they were. Company came that evening, there was no light, a daughter was unable to study, and the household had to go to bed in the dark.

About nine the next morning Mr. House again called up the defendant's office, and asked why the current had not been turned on. He was told he had not paid his bill and that his service had been discontinued. He replied saying it had been paid and had been paid on the preceding morning. When this was verified an apology was made, and service was restored between one and two o'clock that day, and after it had been withdrawn about twenty-four hours.

W. M. Towe, an employee, was the "cut-off man." He had in the ordinary routine of his work and at the end of the day, about four-fifteen o'clock, reported this House incident with his other transactions of the day to the office. The information thus received had not been passed to the service department, as has been seen, when Mr. House called it up at nine o'clock the next morning. Business is large and there are about fifty-five thousand bills a month to look after.

Out of this state of facts litigation grew. In due course the issue was submitted to the jury, which returned a verdict for the plaintiff in the sum of twelve

hundred dollars. The trial court was of opinion that the evidence warranted a verdict for punitive damages, but that the amount was excessive and so reduced it to four hundred dollars.

We have for consideration two bills of exceptions in which it is charged:

1. That the jury was misdirected; and

2. That the verdict is contrary to and not supported by the evidence.

Plaintiff offered no instructions. Four were tendered on behalf of the defendant; two numbered one and three were given, and two numbered two and four were rejected. For this defendant assigns error. Instruction two is as follows:

"The court instructs the jury that if you believe from the evidence that the defendant acted within the terms of the contract in discontinuing the service and that under all the facts and circumstances of this case it reinstated the service within a reasonable time after the plaintiff demanded the same, you must find for the defendant."

[1] Service was not discontinued within the terms of the contract. It could have been discontinued for nonpayment, but when actually cut off payment had been made and accepted. There was no error in the rejection of this instruction.

[2-4] Instruction four told the jury:

"That even if they find for the plaintiff they can only allow him compensatory damages and cannot allow him any damages for the purpose of punishing the defendant."

Instruction one reads thus:

"The court instructs the jury that the plaintiff alleged that defendant (1) 'Wantonly, recklessly, and with utter disregard of the rights of the said plaintiff

caused the said power and light to be entirely cut off from his premises and that it (2) willfully, wantonly and maliciously failed, neglected and refused to restore the current to said premises.'

"Unless the plaintiff has established the correctness of one or the other of said allegations by the preponderance of the evidence you must find for the defendant."

These instructions told the jury in substance that plaintiff could not recover unless it proved those things charged in the declaration, among which is that the wrong complained of was willfully and maliciously inflicted, and they also told the jury that if any recovery was had at all it could only be by way of compensation.

Instruction four as a primary proposition correctly states the law applicable to the evidence and should have been given, but since the court had already given instruction one it could not logically give instruction four. That is to say, it could not tell the jury that it was necessary for the plaintiff to prove willfulness and malice in order to recover and then to further instruct them to the effect that the plaintiff was entitled to compensatory damages only. For willfulness and malice smart money may be assessed. Instruction No. four should not have been rejected, but this error was made necessary by the defendant. And it does not lie in the mouth of one who invites error to complain of its commission.

This brings us to the last bill of exceptions, in which it is charged that the verdict is contrary to the law and the evidence, and is excessive. Originally it was, as we have seen, for twelve hundred dollars, and by the court reduced to four hundred. That punitive damages in part made up this sum appears from the opinion of the court; that it was properly so included

plaintiff stoutly maintains. The law applicable to the facts is well settled in Virginia. Judge Burks, in *Hogg v. Plant*, 145 Va. 175, 133 S. E. 759, 47 A. L. R. 308, says:

[5] "It must be considered as the settled law of this State that punitive damages cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify."

Judge Prentis, in *Hines* v. *Gravins*, 136 Va. 313, 112 S. E. 869, 118 S. E. 144, said:

"There is still another aspect in which this case may be considered which leads to the same conclusion. The general rule is that punitive damages cannot be recovered against a principal for a slander uttered by one of its agents unless it has either authorized and directed the utterance by the agent or after knowledge thereof has ratified and approved it."

Judge Harrison in *Southern R. Co.* v. *Grubbs*, 115 Va. 876, 80 S. E. 749, quoted with approval this statement of the law as formulated by Mr. Justice Gray in *Lake Shore & Co.* v. *Prentice*, 147 U. S. 101, 13 S. Ct. 261, 37 L. Ed. 97:

"In this court, the doctrine is well settled, that in actions of tort the jury, in addition to the sum awarded by way of compensation for plaintiff's injury, may award exemplary, punitive or vindictive damages, sometimes called smart money, if the defendant had acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages.  *  *  *

"Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by

way of punishment of the offender, and as a warning to others, can be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agents within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive or malicious intent on the part of the agent."

To multiply citations would be an affectation of erudition.

[6] We searched this record in vain for evidence to show that any malicious or willful wrong was authorized or ratified. Indeed, no willful wrong was perpetrated, and so there could of necessity be no ratification. The controversy in its inception grew out of the plaintiff's own negligence. Had he paid his bill when due no annoyance would have followed. It was due and overdue, and a collector called in person as a last resort. His interview was not pleasant, and it is not necessary to apportion blame. The bill was not paid, and the collector ordered the current to be cut off, as he had a right to do. This, as a matter of routine, was reported to the office late that afternoon. It is true that in the meantime payment was made, but the office was not notified of the character of this trouble, nor that there was any trouble at all. It is likewise true that appeals for help were sent in three or four times that afternoon, and in response thereto a man was sent to the plaintiff's home, but unfortunately called when no one was in, and it was not until nine o'clock next morning, when Mr. House called up the defendant's office, that all the facts came out. An apology for the inconvenience inflicted was promptly made, and service was restored something after one o'clock, and after an interruption of about twenty-

four hours. This does not approach malice. The quarrel with the collector and want of prompt office attention make up the plaintiff's case. It may be that the delay in turning back the current was unreasonable, and it may be that the company did all in good conscience that could have been expected with the information at hand. As to this we express no opinion. Compensation, if the plaintiff is entitled to anything, must measure his recovery. This was the position that the defendant itself took when it asked the court to give rejected instruction No. four.

In *Southern R. Co.* v. *Grubbs, supra,* it was said:

"A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held for exemplary or punitive damages merely by reason of wanton, oppressive or malicious intent on the part of the agent."

For reasons indicated the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had in accordance with the views expressed in this opinion.

*Reversed and remanded.*