# Richmond

## RICHMOND-ASHLAND RAILWAY COMPANY v. CLARA L. JACKSON.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes and Browning, JJ.

The opinion states the case.

*Bernard C. Syme* and *Leon M. Bazile,* for the plaintiff in error.

*Christian & Lamb,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Designating the parties as they stood in the trial court the defendant owns and operates an interurban electric line running between Ashland and Richmond, and of course through a part of that city. On November 7, 1929, plaintiff, a colored woman and passenger, boarded one of its cars to go to her home. This was a one-man car, operated by the motorman who sat in what is described as a vestibule, the floor of which was a little below the floor of the car itself. As Lombardy street was reached it stopped to let out some children and as it started up plaintiff indicated her desire to get off at the next station stop which was on DuBois avenue. When that was about a block distant she got up, went forward and stood on the vestibule platform by the door which, looking forward, was on her right, and steadied herself by holding on with her right hand to an upright bar put there for that purpose. In her left she held a small package.

If the plaintiff is to be believed, and manifestly the jury did believe her, she stood by this open car door which had, against the company's rules, been open since leaving Lombardy street. The stop at DuBois street was so unexpectedly sudden that she was precipitated through it and thrown to the ground. She was stunned by the impact of her fall and bruised about her back and shoulders as she rolled upon the ground.

According to the contention of the defendant the car came to a smooth stop and was standing still when she got off. It is suggested that she caught her heel in the car step and was thereby thrown. However her fall was brought about, it is conceded that she was badly hurt. The amount of the verdict is not questioned.

This station platform appeared to have been a rectangular filled in box, twelve or fourteen feet long, made up of sills

and across its center at right angles to the car track ran another sill on which she fell. In her evidence, she said:

"Q. How far were you thrown from the car before your body stopped rolling, or did it roll at all?

"A. You see, it was so sudden. The platform is as wide as from here to that gentleman's foot. The bar is in the center. I was thrown on that heavy sill; that is where I got those severe cuts, one here and one here."

Elsewhere, "I rolled over."

A witness, Grace Cogbill, said this car was running at a rapid rate of speed. The brakeman said that he supposed that he was running at about twenty-five miles an hour before he reached this station. He had been talking to some man who stood at his left hand while the plaintiff stood at his right. Lula Brown said that the motorman was talking to this man when the car stopped. That is also the plaintiff's statement.

She said that "when the car suddenly stopped it pitched me right forward," and again that it "came to a very sudden stop." Lula Brown said that "she (the plaintiff) was standing there when the car stopped with such a jerk that it threw her forward;" and again, "it (the stop) was very sudden, so sudden that it threw me forward in the seat;" and again, "when the car stopped it jerked so I had to look out for myself," and that the jerk of the stopping car was not an ordinary one.

Cases are not won and lost with adjectives but the right of recovery lies in the nature and quality of the accident.

Naturally an unsupported person standing in the vestibule would in such circumstances have been thrown forward, but in this case, the plaintiff, to steady herself, was holding with her right hand to an upright rod. Her hold was broken but it was strong enough to deflect the forward motion of her body and as a resultant of these two forces she was thrown violently through the open door. All of this is denied by

the defendant in evidence amply strong to have sustained a verdict for it if credited by the jury.

Any detailed discussion of this conflict would be unfruitful. It has been decided by the jury and their verdict has been sustained by the trial judge. It follows of course that we must also sustain it if it is supported by substantial evidence. It is so supported. It is not probable that she would have been thrown so violently if she had merely stumbled on the car step. And certainly, had she so stumbled, she would not have been apt to roll after striking the ground.

The brakeman, Mr. Swan, in the course of his direct examination makes this significant statement:

"I opened the door after I stopped the car. In other words I used the brake handle with this hand (left) and the handle to the door with my right hand. After the car came to a stop, or just had stopped, I opened the door."

The car was controlled by air brakes and to operate them a lifted finger is enough. It may reasonably be inferred that he was engrossed in conversation with the passenger who stood at his left and so had momentarily lost sight of the fact that anyone wished to get off. When he saw the plaintiff standing by him, manifestly for that purpose, he had already reached the station stop and because a stop there was necessary instantly applied the full power of the brakes.

Certainly a railway is not to be held liable because its cars stop with some jerk. They usually do, but it is equally certain that they should not be run so rapidly and stopped so suddenly as to break the hold of passengers on supports provided to steady them and to throw them *so* violently to the ground. Just where the line is to be drawn must, when there is any real conflict of evidence, of necessity, be left to the jury.

It may be said in passing that had Clara Jackson merely

tripped upon the step when the car stopped she would have fallen upon her face and could not possibly have bruised her back.

"It is generally held that a passenger makes out a *prima facie* case, or raises a presumption of negligence, against the carrier, by showing that, while riding in the vehicle, he was injured by its unusual or violent jerking, jolting, or stopping." Note 7 L. R. A. (N. S.) 1076.

It is true that many cases hold, and we think correctly, that before there is any presumption of negligence plaintiff must prove that the jar or jolt was unusual. We are cited to many cases so holding, and since it is conceded that this is a reasonable rule, we deem it unnecessary to discuss them. Some jolting is to be expected. That is usual in the operation of cars of this kind, and it is only when this jolting or jerking is so unusual that a person of ordinary prudence could not have anticipated it, that negligence is to be presumed.

In *Norfolk & Western R. Co.* v. *Ferguson,* 79 Va. 241, it appears that the plaintiff took a seat in a chair near an open sliding door of the caboose of a freight train. He was thrown through that door when the train went around a sharp curve. The court held that he was guilty of contributory negligence and could not recover. If he was guilty of contributory negligence, of course the defendant was guilty of negligence also.

In *Norfolk & Western Ry. Co.* v. *Rhodes,* 109 Va. 176, 63 S. E. 445, 447, it appears that "the plaintiff was a passenger on the defendant's train, and received the injury complained of in going from his seat to the water closet which was near by. He testified that as he got up from his seat to start to the closet the train 'lunged' or 'rocked' over towards and threw him against the closet door, and that it lunged or rocked back the other way, and not being able to catch hold of anything he fell and struck the back of the seat.

He further testified that it seemed to him that the movement at the time he was injured was unusual and extraordinary, because it threw him forward and backward as it did; and that he had had no trouble before this in going through the trains upon which he had traveled."

The court denied a recovery and said:

"The mere fact that the plaintiff, who did not have hold of anything, was thrown or fell in the way he described does not show that the movement of the train was unusual. No one was to blame for the injury so far as the record shows. It was simply one of those unfortunate accidents which sometimes happen, for which the law holds no one responsible." Cars must lurch and so passengers assume that risk.

In the instant case the plaintiff did have hold of a support for that purpose provided.

The court there lays down this general rule:

"The general rule is that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger himself being in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human care and foresight."

It is in harmony with the rule stated in 7 L. R. A. (N. S.) 1076, *supra*.

In this (Rhodes) case the court, in its opinion, said:

"* * * the facts and circumstances attending the injury, as charged in the declaration, show that the movement of the train was so unusual and extraordinary as to break the plaintiff loose from his hold upon the water closet, and that the accident could not well have happened without negligence on the part of the carrier, and, therefore, raise a *prima facie* presumption of negligence on its part."

A demurrer to the declaration charging the facts thus

stated, was overruled. The plaintiff's failure to recover was not due to the fact that he failed to state a case but to the fact that his proof did not measure up to his allegations.

In *Virginia R. & P. Co.* v. *Bailey*, 123 Va. 250, 96 S. E. 275, it appears that the plaintiff "was thrown from the running board of the car either by a starting of the car after it had stopped, or by its stopping while she was in the act of stepping upon the running board aforesaid. In either case there is no evidence that such movement or cessation of movement of the car was violent or constituted any negligence on the part of the defendant." The court said that any unexpected movement of the car would have been sufficient to make a case but she was not permitted to recover because her statement of the manner in which the accident happened was inherently improbable. In other words, there might have been a recovery had injury been suffered because of any sudden and unexpected movements, but the evidence failed to show any.

A number of assignments of error deal with instructions. Objection is made to this, numbered 1 and given at the instance of the plaintiff:

"The court instructs the jury that the defendant, the Richmond-Ashland Railway Company, owes to its passengers the highest degree of care for their safety known to human prudence and foresight, and is liable to the plaintiff for damages caused by the slightest negligence against which human care, skill and foresight could have foreseen and guarded.

"If the jury believe by a preponderance of the evidence that the motorman operating the car opened the door before coming to a full stop, and carelessly applied the brakes in such a manner as to throw the plaintiff through the open door, thereby injuring her, as alleged in the notice of motion, then the court instructs the jury that they should find for

the plaintiff, provided the jury believe that the plaintiff, Clara E. Jackson, was free from negligence which proximately contributed to the accident."

To it these objections are made:

"(a). The general statement of duty is misleading because the duty in the case is limited to the equipment and operation.

"(b). There is no evidence that the motorman carelessly applied the brakes.

"(c). 'As alleged in the notice of motion' is misleading because there is no such allegation in the notice."

■ This instruction does limit negligence to the condition of the brakes and to the manner in which they were applied. In motions for judgment meticulous exactness and detailed description of matters which go to make up negligence are not required. If there is any real uncertainty in their statement of what is claimed, that can be cured by a bill of particulars. Of course there was no real trouble. We are not living in a world of make believe. The plaintiff had long ago told the defendant's claim agent all that it now knows.

It is next said that there is no evidence that the motorman carelessly applied the brake. We have already stated wherein the motorman was negligent and so it is not necessary to restate what has already been said.

■ It is next said that the statement in this instruction "alleged in the notice of motion" is misleading because there is no such allegation in the notice. In the notice it is said:

"It thereupon became and was your duty to equip your cars with proper devices for the safe operation thereof, and especially to keep the same equipped with proper brakes, and to operate the same with the greatest care at all times so as not to injure passengers using the same. Notwithstanding your duty, as aforesaid, you failed to equip your

cars with proper brakes and other safety devices and to operate and manage them with care and caution."

Negligence was alleged. Objection is made to this instruction numbered 2:

"The court instructs the jury that it was the duty of the defendant company, the Richmond-Ashland Railway Company, to use extraordinary care and caution in the operation of its car to prevent passengers being injured in getting off its cars at a regular point of stopping; and if the jury believe from the evidence that the motorman in charge of said car failed to exercise such care and caution and the plaintiff was thereby injured they shall find for the plaintiff, provided they believe that the plaintiff was not guilty of negligence which proximately contributed to the accident as defined in the other instructions."

It is said that "it is too general. According to the plaintiff's testimony she was not getting off the car. It did not state in what respect the motorman failed to excercise care."

She was getting off. She had gotten up and had reached the vestibule platform.

In instruction No. 1 the court had already said that it was want of due care if the motorman brought his car to so sudden a stop that it threw the plaintiff through an open door. Moreover, it was negligence in the company to have this door open before the car stopped. Had it not been open she would not have been thrown through it.

In instruction No. 4 the court told the jury that any unexpected and unusual jar was *prima facie* negligence.

Instruction No. 3 was objected to because "there is absolutely no evidence that the company failed to provide proper brakes and no allegation or proof that it failed to have same in such working condition as human care and foresight could have perfected.

It is claimed that "what human foresight could have perfected is going farther than the law requires."

■ This is instruction No. 3:

"(III). The court tells the jury that if they believe from the evidence that the defendant company failed to provide proper brakes, or failed to have the same in such working condition as human care and foresight could have perfected, then the court tells the jury that the defendant company was guilty of negligence."

There is no evidence to show that these brakes were out of order. On the contrary it appears that they were in excellent condition and so this instruction is erroneous (*Virginia Ry. & P. Co.* v. *Deaton*, 147 Va. 576-583, 137 S. E. 500), but it could have done no harm. Relief is not asked because the brakes were out of order, but because the car was stopped too suddenly, and so the issue thus made could not possibly have been misunderstood by the jury. Moreover, the same statement in almost the same language appeared in instruction "(a)" asked for on behalf of the defendant and given by the court, in which it was said that before plaintiff could recover, she must prove that the defendant "failed to equip its cars with proper brakes and other safety devices, and to operate and manage them with care and caution."

■ This instruction was also a proper one if the doctrine of *res ipsa loquitur* can be applied. As a primary proposition it cannot. In *C. & O. Ry. Co.* v. *Baker*, 150 Va. 647, 143 S. E. 299, 300, the Special Court, commenting on *Hines, Director General, etc.* v. *Beard*, 130 Va. 286, 107 S. E. 717, said:

"But the court affirms in no uncertain terms the now generally approved doctrine that when the defendant endeavors to rebut the presumption of negligence and introduces evidence tending to free itself on the charge of negligence, then the general burden of proof resting upon the plaintiff to establish the negligence of the defendant still inheres in the case in all its stages."

On the other hand, if this doctrine were invoked by the

defendant itself then we have a case of invited error, and the defendant cannot complain. It cannot "approbate and reprobate."

Nowhere in any exception taken is it said that this doctrine does not apply, although that claim is earnestly urged in argument. So far from contesting its applicability the defendant in its instruction c, which was rejected, asked the court to say:

"If the jury believe from the evidence that the car came to a stop with an unexpected and unusual jar, then there is a *prima facie* presumption that the company was guilty of negligence in maintaining or operating the car, but if they believe that there was no unusual jolt or jerk in stopping the car, then they must find for the defendant."

This doctrine was invoked both by the plaintiff and by the defendant, and the court had done no more than it was asked to do. It had applied it in the form and manner requested by both of these litigants, and so the defendant cannot now, under the ordinary doctrine of estoppel, be heard to complain. *Kimball* v. *Friend's Adm'r*, 95 Va. 125, 27 S. E. 901; *Richmond Traction Co.* v. *Hildebrand*, 99 Va. 48, 34 S. E. 888; *Richmond Traction Co.* v. *Clarke*, 101 Va. 382, 43 S. E. 618; *Louisia County* v. *Yancey's Trustee*, 109 Va. 229, 63 S. E. 452; *Virginia Ry. & P. Co.* v. *House*, 148 Va. 879, 139 S. E. 480; *Shiflett* v. *Com.*, 143 Va. 609, 130 S. E. 777.

■■ This general statement as to the degree of care required has been many times approved.

In *Christie* v. *Griggs*, 2 Camp. 79, Mansfield said that the safety of passengers should be guarded "as far as human care and foresight will go." Hutchinson on Carriers, 3 ed., section 896; *Chesapeake & Ohio Ry. Co.* v. *Hibbs*, 142 Va. 96, 128 S. E. 538, 41 A. L. R. 1083; *Roanoke Ry. & Electric Co.* v. *Sterrett*, 108 Va. 533, 62 S. E. 385, 19 L. R. A. (N. S.) 316, 128 Am. St. Rep. 971; *Balt. & O. R. Co.* v. *Wightman's*

*Admr.*, 29 Gratt. (70 Va.) 431, 26 Am. Rep. 384; *Balt. & O. Ry. Co.* v. *Noell's Admr.*, 32 Gratt (73 Va.) 394.

In *Wightman's Case* Judge Staples had under consideration a somewhat similar instruction. He said:

"We do not deem it necessary to enter into any discussion of the propositions of law involved in these instructions. It is sufficient to say that they are fully sustained by the elementary writers and by the opinions of the most respectable courts in this country. The decisions on this subject are given in Wharton on Negligence, sections 627 to 661, inclusive; also section 422 and the notes to these sections; Redfield on Carriers and Bailees, section 346; *Farish & Co.* v. *Reigle*, 11 Gratt. (52 Va.) 697 [62 Am. Dec. 666]."

It thus appears that this is no longer an open question in Virginia.

Of course passengers assume all risks which are necessarily incidental to their journeys. Utmost care means no more than every care which is practicable by carriers engaged in the transportation of their passengers. Shearman and Redfield on Negligence, 6 ed. volume 1, section 50.

Against any misconception by the jury the court has in its instruction elsewhere adequately guarded.

Objection is also made to this instruction numbered 4:

"(IV). If the jury believe from the evidence that the car came to a stop with an unexpected and unusual jar, then there is a *prima facie* presumption that the company was guilty of negligence in operating the car."

It is said that "under both the law and the allegation the stop must have been violent, 'unexpected' is not sufficient."

As we have already seen, the right to recover does not rest in the vividness of adjectives but in the nature and quality of the accident. This instruction tells the jury that the jar must have been not only unexpected, but unusual. Moreover the court, of its own motion in instruction numbered 8, said:

"(VIII.) The court instructs the jury that if they believe from the evidence that in bringing the car to a stop for the plaintiff to alight, there was no unexpected jar in the application of the brakes, but only the one that is expected and usual in the operation of the car, then there is no negligence on the part of the defendant in the operation of this car."

Instruction No. 6 is objected to because "the failure to equip and operate should be stated in the conjunctive, and the instruction should state that by reason of such failure the car came to a sudden and violent stop which injured the plaintiff."

It is: "(VI.) The court instructs the jury that the burden is upon the plaintiff to prove by preponderance of the evidence that the defendant failed to equip its cars with proper brakes and other safety devices, or to operate and manage them with care and caution so as not to injure its passengers, and that as a result of such failure and breach of duty the plaintiff was injured, without fault on her part, and the negligence of the defendant was the proximate cause of such injury, and unless this is shown by the plaintiff, she cannot recover."

That part of the notice of motion pertinent to this objection has already been copied. We think it is sufficient.

To state defendant's claim another way it contends that it might have operated this car with utter recklessness and yet would not be liable if its brakes were in order.

"The plaintiff is not required in her notice to furnish information in respect to matters of which the defendant has equal or superior knowledge." *Barnard Bus Lines, Inc.* v. *Weeks*, 156 Va. 465, 158 S. E. 870. The notice does say that "you failed to equip your cars with proper brakes and to operate and manage them with care and caution." If we are to give conjunctive construction to these statements in the notice, plaintiff would have to prove, not only that

the car was not equipped with proper brakes, and that it was not operated with proper care, but she would in addition have to show that the car was not equipped with "other safety devices," and this is more than even the defendant itself claims. Had the brakes been bad and had the accident been occasioned thereby, that would have been sufficient. It is also sufficient if they were improperly applied although in good working order.

Instruction No. 7 is objected to because "the word 'unexpected' is misleading. If the jar was not unusual and was not violent, that is sufficient. The instruction should also contain a direction to find for the defendant."

That instruction reads: "(VII.) The court instructs the jury that if they believe from the evidence that in bringing the car to a stop for the plaintiff to alight, there was no unexpected jar in the application of the brakes, but only the one that is expected and usual in the operation of the car, then there is no negligence on the part of the defendant in the operation of this car."

We have already dealt with this matter and need not repeat what has heretofore been said.

Instructions a, b and c were tendered by the defendant and rejected. Instruction c has heretofore been copied. A and b are:

"(a.) The court instructs the jury that the burden is upon the plaintiff to prove by a preponderance of the evidence every material allegation of her notice of motion, and that, therefore, the plaintiff in this case must prove by a preponderance of the evidence that the defendant (1) failed to equip its cars with proper brakes and other safety devices, and to operate and manage them with care and caution, and (2) that as a result of such failure and breach of duty one of its cars came to a sudden and violent stop causing the plaintiff to be thrown from the car, and (3) that the plaintiff was without fault, and (4) that the negli-

gence of the defendant was the proximate cause of injury to the plaintiff. Unless the plaintiff has proved all of these facts by a preponderance of the evidence to the satisfaction of the jury, she cannot recover.

"(b.). The court instructs the jury that while it is the duty of the Electric Railway Company to use the highest degree of care and caution in the operation of cars there is necessarily some jerking or jolting in the stopping of a running electric car, the risk of which is assumed by passengers, and if the jury believe from the evidence that there was no violent and unnecessary jolt or jerk in the stopping of the car at the time the plaintiff was injured, then they must find for the defendant."

Instruction A was probably rejected because it told the jury that it was necessary both that the brakes be bad and that they be negligently operated. Instructions b and c deal with the character of the stop. That matter has been fully covered in other instructions.

In this case there was sharp conflict of evidence but the jury could not possibly have misunderstood what the issue was. They had to determine whether or not this car was so suddenly stopped as to throw the plaintiff through an open door. That was submitted to them, they have decided it. The defendant has had "one fair trial."

We may say in conclusion that the doctrine of *res ipsa loquitur* has as an original proposition little to do with this case. The brakes were in good condition and the evidence shows, circumstantially it is true, just how the accident happened. *Riggsby* v. *Tritton*, 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280; *C. & O. Ry. Co.* v. *Baker, supra.*

For reasons stated the judgment must be affirmed and it is so ordered.

*Affirmed.*

EPES, J., dissenting.

I think this case should be reversed and a new trial

awarded on the ground that the court erred in giving instruction No. 3, which reads:

"The court tells the jury that if they believe from the evidence that the defendant company failed to provide proper brakes, or failed to have the same in such working condition *as human care and foresight could have perfected,* then the court tells the jury that the defendant company was guilty of negligence." (Italics mine.)

This instruction was objected to upon two grounds: (1) That there was no evidence to support it; and (2) that the instruction, by reason of the italicized words, imposes a higher duty upon the company than does the law. In my opinion both objections are good.

The instruction is projected against the background of instruction No. 1 which inaccurately states the law of the case and is misleading.

Instruction No. 1 reads in part as follows: "The court instructs the jury that the defendant  *  *  *  owes to its passengers the *highest degree of care* for their safety *known to human prudence and foresight,* and is liable to the plaintiff for damages for the slightest negligence *against which human care, skill and foresight could have foreseen and guarded."* (Italics mine.)

It is true that instructions in practically this same language have been repeatedly approved by this court, or at least held not to be reversible error. But it is also true that this court has more than once recognized that the language used does not, unless materially modified, accurately state the law upon the subject.

In the instant case the court recognizes that this is so. In its opinion the court says:

"It is true that many cases hold, and we think correctly, that before there is any presumption of negligence plaintiff must prove that the jar or jolt was unusual.  *  *  *  Some jolting is to be expected. That is usual in the operation of

cars of this kind, and it is only when this jolting or jerking is so unusual that a person of ordinary prudence could not have anticipated it, that negligence is to be presumed."

Again the court says: "Of course passengers assume all risks which are necessarily incidental to their journeys. *Utmost care* means no more than every care which is *practical* by carriers engaged in the transportation of their passengers. Shearman and Redfield on Negligence, 6 ed., volume 1, section 50." (Italics mine.) The views thus expressed by the court in its opinion in the case at bar cannot be squared with the unmodified language above quoted from instruction No. 1, and there is no instruction given in this case which modifies that language.

In Shearman and Redfield on Negligence, 6 ed., volume 1, section 50 (cited by the court) and section 51, it is said:

Section 50. "It is indeed absurd to require from any person perfection in care, diligence, or skill. No human being is capable of maintaining so high a standard. It would be grossly unjust and impracticable to require from any ordinary person even that extraordinary degree of care which single individuals of eminent prudence and ability have succeeded in maintaining. But when the utmost degree of care required is that which has been demonstrated to be practicable by its observance on the part of a recognized class of persons engaged in similar affairs, there is no injustice or impracticability in requiring that standard to be observed by all persons who undertake that business, especially when such a requirement is only made in a few specific branches."

Section 51. "It is the settled rule of common law throughout the United States, and probably also in Great Britain and Ireland, that common carriers of persons, and especially railway companies, are liable for any damage suffered by their passengers, which is proximately caused by the failure of such carriers to use the highest degree of prudence, and

in some cases, the utmost human skill and foresight. This precise language is constantly used in charging juries, and it is sustained by such controlling authority as to make it useless to discuss its propriety at any length. But while these words cannot be excepted to, the current of decisions shows that a carrier is entitled to have them explained to the jury. The courts do not hold that carriers are bound to use the highest degree of prudence or skill which could be conceived of as possible to man. They are only held to the highest degree which has been demonstrated by experience to be practicable. Thus, railway companies are responsible for their failure to use improvements and new inventions, the value of which has been demonstrated by actual experience, but not for omitting to try mere experiments or to adopt untried and unproved inventions. These qualifications bring even this strong language, in our opinion within the limits of our standard definition of 'great care,' but to no lower degree.''

In holding that the court did not err in giving an instruction using the language "the greatest possible care and diligence," this court, in *Wash., etc., R. Co.* v. *Vaughan*, 111 Va. 785, 794, 69 S. E. 1035, 1038, says: "What is meant by the language used in the instruction is that the carrier of passengers is bound to use the highest *practical* degree of care, and that a failure to use it constitutes actionable negligence." But is it not somewhat unreasonable, to say the least, for a court to expect a juryman to know that it is either proper or permissible for him to correct an instruction given him by the court by striking out "possible" and inserting "practical," unless he be somewhere told that he should do so; or to know that a court does not mean what it says?

In 2 Cooley on Torts, 3 ed. page 1358, that able lawyer and jurist says:

"For the safe transportation of the property he (the car-

rier) is responsible as insurer, with the exceptions already stated; but in the case of passengers he *only* undertakes that he will carry them *without negligence or fault*. But as there are committed to his charge for the time the lives and safety of persons of all ages and of all degrees of ability for self-protection, and as the slightest failure in watchfulness may be destructive of life or limb, it is reasonable to require of him the *most perfect care of prudent and cautious men*, and his undertaking and liability as to his passengers goes to this extent, that, as far as human foresight and care can *reasonably* go, he will transport them safely.   *   *   * But the carrier is not an insurer of the safety of his passengers and is not liable for injuries which the *highest practical* care cannot avoid.   'The rule, that the carrier is bound to exercise the highest degree of care that is possible to human foresight and prudence does not require a construction that will make the carrier an insurer against accidents, nor the prevention of accidents by the employment of means which, if the accident could have been foretold might have been used to prevent it,   *   *   *   *nor for an impracticable character or extent of precaution*, which could not be observed without so ruinous a cost as to destroy the business, *and in all cases the liability is only such as results from negligence.'* " (Italics mine.)

In 5 Elliott on Railroads, 3 ed., section 2397, *et seq.*, that authority says:   (Italics mine.)

"While the adjudged cases nearly all concur in holding that a very high degree of care is required of railroad carriers, and that they are responsible for injuries proximately resulting from slight negligence on their part, there is, nevertheless, much difference in the statements of the rule in the opinions of the courts.   It seems to us that the expressions in some of the cases are too strong since they convey the meaning that the carrier is liable absolutely and at all events.   We do not doubt that the carrier is

bound to exercise *the highest practicable* degree of care, or, in other words, the utmost or highest care consistent with the practical operation of the business, * * * but we do not believe that a carrier is bound to anticipate and provide against all occurrences which may be conceived by the mind of man." (Section 2397.)

"It is unnecessary to dwell at length upon the duty of a railroad carrier respecting its road-bed and tracks, for the general rule requiring a carrier to exercise the highest *practical degree* of care obviously extends to and embraces the road-bed and track." (Section 2398.)

"It is not necessary to do more than say that the rule as to the degree of care and diligence required of a railroad carrier imposes upon them the duty of exercising the highest degree of *practical care* to provide and keep safe for use engines, cars, equipment and appliances. * . * * But while there is no substantial controversy as to the general rule there is conflict of opinion upon one phase of the question, namely, as to what constitutes the highest degree of practical care." (Section 2399.)

"A railroad carrier is bound to exercise a high degree of care to secure and use the most improved machinery and appliances. It can not, perhaps, be said that there is an absolute duty to adopt the latest improvements, but a very high degree of care in that regard is required." (Section 2400.)

An instruction not limiting the care required by a carrier of passengers to such as is practical, or consistent with the practical operation, has been held erroneous in the following cases: *Tri-City R. Co.* v. *Gould*, 217 Ill. 317, 75 N. E. 493, 494; *North Chicago, etc., R. Co.* v. *Polkey*, 203 Ill. 225, 67 N. E. 793. See also *St. Louis, etc., R. Co.* v. *Sweet*, 57 Ark. 287, 21 S. W. 587, 589; *Colorado, etc., R. Co.* v. *McGeorge*, 46 Colo. 15, 102 Pac. 747, 748, 133 Am. St. Rep. 43, 17 Ann. Cas. 880; *Libby* v. *Railroad Co.*, 85 Me. 34, 26 Atl. 943,

945, 20 L. R. A. 812; *Wanzer* v. *Chippewa, etc., R. Co.,* 108 Wis. 319, 84 N. W. 423, 426, and cases cited in note 133 Am. St. Rep. page 50.

In *Tri-City R. Co.* v. *Gould, supra,* the Illinois court says:

"The second instruction is erroneous, because it does not limit the degree of care required of the carrier to such care as is consistent with the practical operation of the road. In other words, that part of the second instruction, which told the jury that 'the defendant, through its servants in charge of such car, was required to do all that human care, vigilance, and foresight could reasonably do, in view of the character and mode of conveyance adopted, to safely carry him as such passenger,' should have read as follows: 'The defendant, through its servants in charge of such car, was required to do all that human care, vigilance, and foresight could reasonably do, in view of the character and mode of conveyance adopted, and consistently with the practical operation of the road to safely carry him as such passenger.'"

In *St. Louis, etc., R. Co.* v. *Sweet, supra,* the Arkansas court says: (Italics mine.)

"The first and second instructions for the appellee were not correct. The objection to the first is that, as applied to this case, it was not full enough. As to the second, the railroad company, in operating its freight train with caboose attached for passengers, was not bound to the 'utmost diligence which human skill and foresight could effect,' etc., as set out in this instruction, given for the appellee. The law in this behalf applicable to this case is correctly laid down in [*Arkansas M.*] *Railway Co.* v. *Canman,* 52 Ark. 524, 525, 13 S. W. 280, where it is said that 'railroad companies "are bound to the most exact care and diligence, not only in the management of trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers." While the law demands the utmost care for the safety of

the passenger, it does not require railroad companies to exercise all the care, skill, and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible peril. They are not required, for the purpose of making their roads perfectly safe, to incur such expenses as would make their business wholly impracticable, and drive prudent men from it. They are, however, independently of their pecuniary ability to do so, required to provide all things necessary to the security of the passengers *reasonably consistent* with their business, "and appropriate to the means of conveyance employed by them," and to adopt the highest degree of *practical* care, diligence, and skill that is consistent with the operating of their roads, and that will not render their use impracticable or inefficient for the intended purposes of the same.' "

In *Colorado, etc., R. Co.* v. *McGeorge, supra*, the instruction given by the court read: "Carriers of passengers for hire are bound to exert the utmost skill and prudence in conveying their passengers, and are responsible for the slightest negligence or want of skill either in themselves or their servants. They are bound to use such care and diligence as the most careful and vigilant man would observe in the exercise of the utmost prudence and foresight. * * * They are bound to exercise all the care and skill which human foresight and diligence can suggest."

In holding that the giving of the instruction was reversible error, the Colorado court says:

"We have examined practically all of the cases at hand wherein this precise question has been considered, and reach the conclusion that the clear result of all of them is to the effect that:

"For the safety of their passengers, common carriers are required to exercise the highest degree of care *reasonably* to be expected from human vigilance and foresight, in view of

the mode and character of the conveyance adopted and consistent with the practical prosecution of their business. * * *.

"This is the rule expressly enunciated in some of the cases, and has the approval of nearly all of the courts of final resort in this country which have made any pronouncement on the subject.[1] * * * Tested by the foregoing rule the instruction first quoted is fundamentally wrong. By the use of the words, 'they (common carriers of passengers) are bound to exercise all the care and skill which human foresight and diligence can suggest,' contained in the last clause thereof, without condition or modification, the highest care and diligence which human foresight could suggest, that is, conceive or imagine, was here imposed upon the defendant by the court without restriction or limitation."

In *Wanzer* v. *Chippewa, etc., R. Co., supra*, the Wisconsin court says:

"By the charge the defendant was held 'bound to exert the utmost care and prudence in carrying its passengers.' Undoubtedly there are adjudications which give support to such expressions in regard to such carriers, but, in our judgment, they are misleading. A recent writer has stated, as the clear result of the best adjudication on the subject,

---

[1] The court cites here the following cases as sustaining this statement: *Wright* v. *Chicago, etc., R. Co.*, 4 Colo. App. 102, 35 Pac. 196; *Denver Consol. Elec. Co.* v. *Simpson*, 21 Colo. 376, 41 Pac. 499, 31 L. R. A. 566; *Denver Consol. Elec. Co.* v. *Lawrence*, 31 Colo. 310, 73 Pac. 39; *Chicago, etc., R. Co.* v. *Byrum*, 153 Ill. 131, 38 N. E. 578; *Arkansas Midland R. Co.* v. *Canman*, 52 Ark. 517, 13 S. W. 280; *Pershing* v. *Chicago, etc., R. Co.*, 71 Ia. 561, 32 N. W. 488; *St. Louis, etc., R. Co.* v. *Sweet*, 57 Ark. 287, 21 S. W. 587; *Murray* v. *Lehigh Valley R. Co.*, 66 Conn. 512, 34 Atl. 506, 32 L. R. A. 539; *Chicago, etc., R. Co.* v. *Lewis*, 145 Ill. 67, 33 N. E. 960; *Chicago, etc., R. Co.* v. *Arnol*, 144 Ill. 261, 33 N. E. 204, 19 L. R. A. 313; *Meier* v. *Pa. R. Co.*, 64 Pa. St. 225, 3 Am. Rep. 581; *Pittsburgh, etc., R. Co.* v. *Thompson*, 56 Ill. 138; *Southern Kan. R. Co.* v. *Walsh*, 45 Kan. 653, 26 Pac. 45; *Tuller* v. *Talbot*, 23 Ill. 357, 76 Am. Dec. 695; *Phila., etc., R. Co.* v. *Anderson*, 72 Md. 519, 20 Atl. 2, 8 L. R. A. 673, 20 Am. St. Rep. 483; *Kennon* v. *Gilmer*, 5 Mont. 257, 5 Pac. 847, 51 Am. Rep. 45; *Elliott* v. *Newport St. R. Co.*, 18 R. I. 707, 28 Atl. 338, 31 Atl. 694, 23 L. R. A. 208; *Ford* v. *London, etc., R. Co.*, 2 F. & F. (Eng.) 730; *Indianapolis, etc., R. Co.* v. *Horst*, 93 U. S. 291, 23 L. Ed. 898; *Michigan Cent. R. Co.* v. *Coleman*, 28 Mich. 440.

the rule thus: 'For the safety of their passengers common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.' 1 Fetter. Carr. Pass. section 8 and cases there cited. * * * The rule stated seems to be reasonable and just, both to the passenger and the carrier."

In *Libby* v. *Maine, etc., R. Co., supra,* the court quotes with approval what is said by the court in *Tuller* v. *Talbot,* 23 Ill. 357, 76 Am. Dec. 695.:

"While courts, in announcing the rule governing common carriers of persons, have said that they must be held to the utmost degree of care, vigilance and precaution, it must be understood that the rule does not require such a degree of vigilance as will be wholly inconsistent with the mode of conveyance adopted, and render it impracticable. Nor does it require the utmost degree of care which the human mind is capable of imagining. Such a rule would require the expenditure of money and the employment of hands, so as to render it perfectly safe, and would prevent all persons of ordinary prudence from engaging in that kind of business. But the rule does require that the highest degree of *practicable care and diligence should be adopted that is consistent with the mode of transportation adopted.*" (Italics mine.)

In *So. Kan. Ry. Co.* v. *Walsh,* 45 Kan. 653, 26 Pac. 45, 47, the court says:

"It (a common carrier of passengers) is bound to exercise the highest degree of practicable care; not the utmost possible precaution that might be imagined, but the highest care and precaution known to practical use and which are consistent with the mode of transportation."

Wharton, in his Law of Negligence (2 ed.), section 629, says:

"But the railroad company * * * does not warrant

the surety of the carriage. It is liable for a failure to apply the degree of care, skill, and diligence which good business men of the class are accustomed, under similar circumstances, to apply. But perfect skill and care are not required; nor is the company compelled to exert an excessiveness of caution which would defeat the object for which the road was built."

In *Michigan Cent. R. Co.* v. *Coleman,* 28 Mich. 440, the opinion, in which Judge Cooley concurred, states:

"The jury were told that carriers of passengers are 'legally bound to exert the utmost care and skill in conveying their passengers, and are responsible for the slightest negligence or want of skilfulness either in themselves or in their servants.' 'That the law is that common carriers of passengers are bound to the utmost care and skill in the performance of their duty. That the degree of responsibility to which carriers of passengers are subject is not ordinary care, which will make them liable for ordinary neglect, but extraordinary care, which renders them liable for slight neglect. It is the danger to the public which may proceed, even from slight faults, unskilfulness, or negligence of passenger carriers or their servants, and the helplessness in which passengers by their conveyances are, which makes this duty of extraordinary care a legal one.' The language used would fairly permit the jury to find anything to be negligence which could by any possibility be avoided. But negligence is neither more nor less than failure of duty. All railroad companies are held to the duty of being prudent railroad companies, and bound to conduct their business with such precautions as prudence has usually found necessary."

In discussing an instruction using the language "the utmost degree of care and prudence," the Tennessee court says, in *Ill. Cent. R. Co.* v. *Kuhn,* 107 Tenn. 106, 64 S. W. 202, 207:

"The precise language is constantly used in charging

juries; and it is sustained by such controlling authority as to make it useless to discuss its propriety at any length. But, while those words cannot be excepted to, the current of decisions shows that a carrier is entitled to have them explained to the jury. The courts do not hold that carriers are bound to use the highest degree of prudence or skill *which could be conceived of as possible to man.* They are only held to the highest degree which has been demonstrated by experience to be practical. I Shear. & R. Neg. section 51.

"* * * The meaning whether of one formula or another is that the carrier is legally bound to exercise the greatest, highest, or utmost care, skill, and foresight that human experience and observation and the known laws of nature suggest as conducive to the passengers' safety and capable of being put into practice, or such active, solicitous care, skill, and foresight as intelligent, suitably trained, and very cautious persons would be expected to exercise for their own personal protection in the same business and surroundings, and with the instrumentalities required and employed."

From what has been said above I think it is beyond question that upon reason and authority instruction No. 1 is an inaccurate and misleading statement of the law, which, unless it be so plainly modified by other instructions as to make it clear that the court does not mean what it says in the instruction, ought not to be given.

To continue to approve an instruction using this language, because it has been repeatedly heretofore approved by this and other courts, is to make a fetish of precedent; and I think the court should disapprove the giving of an instruction using this language, certainly unless it be accompanied by other instructions which in very plain and clear terms materially modify it. Even then the giving of such an instruction is, to say the least, questionable, for it does not

seem to be very intelligent or helpful to give a jury one instruction and then tell it in another instruction that the court did not mean what it said in the first instruction. The difficulties of a jury are sufficient without imposing upon it the duty of trying to reconcile inconsistent statements in instructions given by the court.

In the instant case no objection was made to instruction No. 1 on this ground, probably because counsel felt it useless to do so in the light of the number of cases in which this court has clung to this inaccuracy on the ground of precedent. But whether objected to or not the giving of the instruction projected all that was said by the court in its instructions against an inaccurate and misleading statement of the law, which at least has a tendency to distort the construction and application by the jury of the other instructions. With this instruction before it, the jury entered upon its deliberations with the right, as reasonable men, to understand that the defendant was negligent if they believe that the accident could by any possibility have been avoided by *perfection* in care, diligence and skill; which is not the law.

The inaccuracy and tendency to mislead of instruction No. 1 is accentuated, intensified and particularized in instruction No. 3. One single application of the brakes after the car started on its trip could so wear the brake shoes that they would not be in "such condition as human care and foresight could have perfected;" yet the instruction tells the jury that if the brakes were not as perfect as man could make them, then they must find that the defendant was guilty of negligence.

Perhaps it may be said that it would be absurd for the jury to believe that the court really meant that it is the duty of the carrier to keep its brakes, or other appliances, "in such condition as human care and foresight could have perfected." But has not the jury the right, and is it not its duty, to believe that the court means what it tells them

in plain terms? And how can it be known that the jury has not done so?

Even if the court should feel itself bound by the fetish of precedent to continue to approve the giving of a general instruction in the language used in instruction No. 1, there exists no such reason for approving the incorporation of this language in instruction No. 3, and specifically making a concrete application of it as is here done. Besides, the language used in instruction No. 3 imposes even a greater degree of care than that imposed by instruction No. 1. In an extensive examination of the Virginia cases I have been able to find no case in which the court has approved an instruction specifically telling the jury, as is done in instruction No. 3, that it is the duty of a carrier to have its brakes, or any other appliances, "in such working condition as human care and foresight could have perfected." Why then should the court approve this instruction, if it be erroneous and misleading, as the court in its opinion seems to recognize that it is?

But the instruction is also erroneous because there is no evidence to support it. This the court seems to recognize where it says in its opinion: "There is no evidence to show that these brakes were out of order. On the contrary, it appears that they were in excellent condition and so this instruction is erroneous (*Virginia Ry. & P. Co.* v. *Deaton*, 147 Va. 576-583, 137 S. E. 500)." But the court would seem to hold the giving of the instruction not to be reversible error for one, or perhaps both, of two reasons.

First, the court seems to hold that it was not reversible error, because "it could have done no harm," saying: "Relief is not asked because the brakes were out of order, but because the car stopped too suddenly, and so the issue thus made could not possibly have been misunderstood by the jury." My understanding is that the fact that a car stops suddenly is not of itself sufficient to sustain a recovery. It must appear that the sudden stopping was due to the negligence of the defendant. One of the allegations of the

notice of motion for judgment is that the defendant was negligent in that it "failed to equip your cars with proper brakes and other safety devices and to operate and manage them with care and caution." The instruction tells the jury that it should find the defendant guilty of negligence if it believes from the evidence that the defendant "failed to provide proper brakes or failed to have the same in such working condition as human care and foresight could have perfected." The reasoning of the court in holding the instruction harmless error would seem to be that, as there was no evidence upon which the court could properly have based the instruction, the jury knew this and disregarded the instruction. If this line of reasoning be correct, then it would seem that the giving of no instruction without evidence to support it would constitute reversible error.

If the instruction is in fact an erroneous instruction I cannot say that it was harmless error. It may have been, but I have no way of knowing whether it was or not. Certainly it was not harmless, unless the jury themselves discovered that the court was wrong in intimating to them that there was sufficient evidence in the record to warrant them in finding that the brakes were not in as perfect condition as human care and foresight could make them.

Second, the court holds that though the giving of the instruction was error it was error invited by the defendant, and it is therefore estopped from complaining of it. The court, as I understand it, admits that the instruction could not possibly be a correct instruction unless the doctrine of res ipsa loquitur can be applied to support it; and then shows that this doctrine has no proper application to this case, certainly in so far as it can be made a basis for a finding predicated upon the brakes being in an improper condition. In this the opinion of the court is clearly right, because, as stated by the court, the uncontradicted evidence is that the brakes were in excellent condition.

But the court holds that by *asking* for the below instruc-

tion, which the court *refused*, the defendant invited the court to give instruction No. 3, and led the court into the error of giving. The instruction asked for by the defendant, which the court holds invited this error, reads as follows: "If the jury believe from the evidence that the car came to a stop with an unexpected and unusual jar, then there is a *prima facie* presumption that the company was guilty of negligence *in maintaining* or operating the car, but if they believe that there was no unusual jolt or jerk in stopping the car, then they must find for the defendant." (Italics mine.)

The reasoning of the court seems to be this: The defendant, by including the words *"in maintaining"* in this instruction for which it asked, in effect asserted that the doctrine of *res ipsa loquitur* applied to this case to such an extent as to sustain a finding by the jury predicated upon a finding that the car was not equipped with proper brakes or that the brakes were not properly maintained; and it thereby invited the court to make the error which it had made in giving instruction No. 3, upon the theory that the doctrine of *res ipsa loquitur* was itself sufficient to support an instruction predicated upon the brakes being defective, despite the fact that the uncontradicted evidence showed that the brakes were not defective.

This reasoning is attenuated and strained, and does not commend itself to my mind.

If this be the law, then when the court has granted an instruction based upon an erroneous theory of the case, it is very dangerous for the defendant to ask any instruction of any kind which by any claim of attenuated reasoning may be construed to give any recognition or countenance whatever to that theory of the case, no matter how essential it may be to him to minimize as far as possible the error committed against him. There may be cases in which the defendant, by asking for an instruction which is refused, may be said to have invited the court to give, at the instance

of the plaintiff, an erroneous instruction; but generally speaking a refused instruction is not a proper basis for the application of the doctrine of invited error.

The court cites six Virginia cases as supporting the view which it takes. In my opinion none of them support the position of the court. In the first five of them the instruction held to have invited the error was given, not refused. *Kimball & Fink* v. *Friend's Adm'r*, 95 Va. 125, 27 S. E. 901; *Richmond Traction Co.* v. *Hildebrand*, 99 Va. 48, 34 S. E. 888; *Richmond Traction Co.* v. *Clarke*, 101 Va. 382, 43 S. E. 618; *Louisa County* v. *Yancey's Trustee*, 109 Va. 229, 63 S. E. 452, and *Va. Ry. & P. Co.* v. *House*, 148 Va. 879, 139 S. E. 480. In the other case, *Shiflett* v. *Com.*, 143 Va. 609, 130 S. E. 277, nothing more is announced than the principle that an erroneous instruction will not be cause for reversal if it is apparent that the party complaining could not possibly have been prejudiced thereby.

I see nothing in this record from which I think it can be fairly inferred that the court was invited, or led into, giving instruction No. 3 by anything that the defendant did or asked. On the contrary, I think the record clearly shows that the instruction asked by the defendant was asked in an effort to minimize the effect of the instructions given at the request of the plaintiff, over the objection of the defendant.

If there is any substantial basis on which the judgment of the trial court can be sustained, it is that regardless of the error committed by the court the preponderance of the evidence shows that the verdict of the jury was plainly right. I do not, however, understand that the court entertains the view that the evidence in this case is such that if the verdict should be set aside for erroneous instructions, the court should nevertheless here enter final judgment for the plaintiff. Certainly I do not entertain that view. I think the judgment should be reversed and the case remanded for a new trial.